COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Chesapeake, Virginia


JULIUS J. SCOTT, S/K/A
 JULIUS JAMES SCOTT
                                          OPINION BY
v.    Record No. 2521-98-1      JUDGE JERE M. H. WILLIS, JR.
                                       FEBRUARY 8, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge

            Charles E. Haden for appellant.

            John H. McLees, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     On appeal from his convictions of two counts of robbery, in

violation of Code § 18.2-58, and two counts of use or display of

a firearm in the commission of a robbery, in violation of Code

§ 18.2-53.1, Julius J. Scott contends (1) that the trial court

erred in admitting into evidence his codefendants' unreliable

hearsay statements, (2) that the evidence was insufficient to

support his convictions, and (3) that the trial court lacked

jurisdiction.  Finding no error, we affirm the judgment of the

trial court.

                      I.  Background

          On appeal, we review the evidence in
          the light most favorable to the
          Commonwealth, granting to it all reasonable
          inferences fairly deducible therefrom.  The

> judgment of a trial court sitting without a
> jury is entitled to the same weight as a
> jury verdict and will not be set aside
> unless it is plainly wrong or without
> evidence to support it.

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Around midnight on February 1, 1998, Robert Randolph and Jacqueline James were shopping for food at a 7-Eleven store. They then crossed the street to a Food Lion store, where they made a purchase. They were followed outside by three men who robbed them of $8 in cash and less than $10 worth of groceries.

Detective Larry Rilee interviewed Maurice Sirls, Kawaski Bass, and Scott concerning the robbery.

Sirls told Detective Rilee that he, Bass, and Scott drove to Newport News and parked behind a 7-Eleven. They walked across the street to a Food Lion parking lot, where they robbed a white couple who left the store. Sirls stated that he used a handgun to rob the man and that Scott used an antique gun to rob the woman.

Bass told Rilee that he, Sirls, and Scott went to Newport News in Scott's mother's car and parked behind a 7-Eleven. They waited outside the Food Lion for a man and woman to come out. Bass stated that he did not have a firearm but that Sirls had a .25 caliber handgun and Scott had an unloaded old handgun. Bass stated that Sirls robbed the male victim. Bass denied that he

-

participated in the robbery, stating that he walked off a distance to put himself away from the scene.

Scott, having been properly advised of his <u>Miranda</u> rights, told Detective Rilee that he was in his mother's car with Sirls and Bass. They discussed and planned a robbery. After parking behind a 7-Eleven, they walked to the Food Lion. He said that Sirls produced a gun and took money from the male victim and that he checked the female victim's pockets. He admitted taking groceries from the female victim. He denied that he actually produced a gun, but admitted that he possessed a weapon and had exposed it so that the victims could see it.

Over Scott's objection, the trial court admitted Sirls' statement into evidence. It also admitted Bass' statement, to which Scott made no objection.

Scott, then seventeen years old, was charged initially in juvenile and domestic relations district court. On May 28, 1998, the juvenile and domestic relations district court found probable cause for the charges and transferred Scott to the trial court. Sirls, Bass, and Scott were tried jointly in a bench trial. Scott was convicted of two counts of robbery, in violation of Code § 18.2-58, and two counts of use of a firearm in the commission of robbery, in violation of Code § 18.2-53.1. The trial court sentenced him to a total of sixty-eight years imprisonment, with forty years suspended.

-

## II.  Admissibility of Codefendants' Statements

Citing Lilly v. Virginia, 119 S. Ct. 1187 (1999), Scott first contends that the trial court erred by admitting Sirls' and Bass' statements into evidence.  Whether the statements were unreliable hearsay is an issue that can be considered on appeal only if properly preserved.  See Rule 5A:18; Jones v. Commonwealth, 230 Va. 14, 18 n.1, 334 S.E.2d 536, 539 n.1 (1985).  At trial, Scott did not object to the statements as hearsay.  When Sirls' statement was tendered, Scott's counsel objected as follows:  "[a]lthough these people are being tried together, I don't think the [trial c]ourt should consider statements of co-defendants against each other."  Confronted with Randolph v. Commonwealth, 24 Va. App. 345, 482 S.E.2d 101 (1997), Scott's counsel replied, "I feel that case only applies if the witnesses are unavailable.  They are certainly available and to my knowledge they haven't been subpoenaed."  Scott lodged no objection to the introduction of Bass' statement.

To preserve an issue for appeal, objection must be made with specificity.  See Rule 5A:18.  This requirement applies to claims of constitutional deprivation.  See Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 898 (1992).  By failing to raise before the trial court his claim that Sirls' and Bass' statements were unreliable hearsay, Scott denied the trial court the opportunity to address and correct the error of which he now complains.  Thus, he failed to preserve that issue for appeal.

-

See Simmons v. Commonwealth, 6 Va. App. 445, 450-51, 371 S.E.2d 7, 10 (1988).[1]

### III. Sufficiency of the Evidence

Scott next contends that the evidence is insufficient to support his convictions. He argues that the Commonwealth did not prove that the robbery of Randolph and James was the same robbery confessed by the three defendants.

Randolph identified Sirls and Bass as two of the three robbers who attacked him and James in the Food Lion parking lot. Sirls' statement to Detective Rilee described how he, Bass, and Scott parked at a 7-Eleven at "Glendale and Warwick" and crossed the street to the Food Lion. Both Randolph and Detective Rilee described the Food Lion as being in the Hidenwood neighborhood. The testimony of Randolph and Detective Rilee and the statements made by Sirls, Bass, and Scott are not inherently incredible and are sufficient to support the trial court's finding that Sirls, Bass, and Scott robbed Randolph and James.

### IV. Jurisdiction of Trial Court

At Scott's sentencing hearing, his mother testified that he was mentally retarded and was enrolled in special education classes. Scott contends that a juvenile can be transferred to

---

[1] In Bass v. Commonwealth, ___ Va. App. ___, ___ S.E.2d ___ (2000), we held that admission of the codefendants' statements into evidence violated Lilly and was error, albeit harmless error. In Bass, the Commonwealth did not raise the procedural bar raised in this case.

-

the circuit court for trial as an adult only if the requirements of Code § 16.1-269.1 have been followed strictly.  He argues that the juvenile court made no findings regarding his mental retardation and that this omission denied jurisdiction to the circuit court under Code § 16.1-269.1.  <u>See</u> Code § 16.1-269.1(A)(4)(i).

Scott's argument ignores Code § 16.1-269.1(E), which provides:

> [A]n indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's age.

<u>Id.</u>  Any error made by the juvenile court in failing to make findings as to Scott's mental retardation was cured by the return of indictments in the trial court.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>

-